# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD

| | |
|---|---|
| VERONICA SANDERS, | |
| Plaintiff, | |
| v. | Case No. 3:22cv120-MPM-JMV |
| VOLVO GROUP NORTH AMERICA, LLC, | **JURY DEMANDED** |
| Defendant. | |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

COMES NOW, Plaintiff, VERONICA SANDERS, by and through undersigned counsel, and respectfully submits to the Court the following Complaint for Damages and Injunctive Relief against her former employer, the Defendant, VOLVO GROUP NORTH AMERICA, LLC, for discrimination based upon her sex (female) and race (African American).

### INTRODUCTION

1. Plaintiff, a resident of Memphis, Tennessee and former First Line Manager with Volvo at their Byhalia, Mississippi location, hereby brings this Complaint for Damages and injunctive relief against her former employer, Defendant Volvo Group North America (Volvo), for discrimination because of her sex (female) and race (African American).

2. The acts and/or omissions by Defendants of discrimination are in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.* (sex and race) and 42 U.S.C. § 1981 (race).

1

## JURISDICTION

3. The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331, in that this case involves a civil action arising under the Constitution and laws of the United States; 42 U.S.C. § 1981; 28 U.S.C.§1343(a)(3) and (4) in that this is a civil action to secure equitable or other relief and to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; 42 U.S.C. § 2000(e)-5(f)(3) as this is a civil action brought under Title VII of the Civil Rights Act of 1964.

4. On July 13, 2021, Plaintiff timely filed her Charge of Discrimination against Volvo Group North America, LLC for race and sex discrimination with the Equal Employment Opportunity Commission (EEOC) attached as Exhibit A.

5. Plaintiff received her Notice of Suit Rights from the EEOC regarding her EEOC Charge No. 490-2021-01865 alleging sex (female) and race (African American) discrimination on March 25, 2022 attached as Exhibit B. This lawsuit is timely filed within 90 days after Plaintiff received this notice.

## VENUE

6. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391 (b)(1) and (2) as Defendant is subject to the jurisdiction of this Court and the events or omissions giving rise to the claims occurred in this judicial district.

## PARTIES

7. Plaintiff, Veronica Sanders, is an adult female citizen of the United States, who resides and has resided at all times pertinent to the events referred to herein in Shelby County, Tennessee, and worked in Marshall County, Mississippi.

8. Defendant, Volvo Group North America, LLC is a foreign-owned distribution center warehousing and distributing parts for its commercial truck and construction equipment business, registered as a limited liability company with the state of Mississippi, doing business in Byhalia, MS located at 100 Gateway Global Dr., 38611. Service can be accomplished by delivering a copy of the Summons and Complaint to the Manager, President: Martin Weissburg, 7900 National Service Road, CC2-7, Greensboro, NC 27409 and/or via CT Corp. System 645 Lakeland East Drive, Ste 101, Flowood, Mississippi, 39232.

**FACTS**

9. Beginning September 2018, Ms. Sanders, African American female, was employed by Volvo at the Byhalia, Mississippi location.

10. Ms. Sanders was originally hired as a Team Lead and was promoted in January 2019 as a First Line Manager, holding this title until she was abruptly terminated in September 2020.

11. Prior to her termination, Ms. Sanders had a good employment record, including meeting or exceeding all her performance metrics.

12. She did not receive any disciplinary actions or performance improvements.

13. On or about September 10, 2020, Ms. Sanders took part in a quality control conference call.

14. On the call, Service Market Logistics North America CDC Director Brad Bossence, white male, accused Ms. Sanders of not administering coaching to an employee by the name of Angelica Griffin, African American female, regarding errors this employee had made.

15. Ms. Sanders adamantly denied any failure to coach this employee, pointing Mr. Bossence to coaching QDFs given to this employee in 2018, 2019, and 2020.

16. Based on her experience, Ms. Sanders believes Mr. Bossence did not take well to being corrected or stood up to by a black female employee.

17. In fact, Mr. Bossence quickly became very belligerent on the call, including using profanity towards Ms. Sanders.

18. Mr. Bossence's behavior became so concerning that another employee, Rickey Hobson, African American male, asked if the conversation could be taken "offline" based on the severity of the tone Mr. Bossence was using.

19. Shortly thereafter, on or about September 15, 2020, Ms. Sanders was called into the conference room with Operations Manager Eduardo Martinez, Hispanic male, Communications Manager Rebecca Nevel, Hispanic/lantana female, and First Line Manager Edward "Eddie" Nelson, African American male, for a meeting regarding alleged concerns over conversations Ms. Sanders had with other employees in the "Mack Refill" department.

20. Ms. Nevel asked specifically about conversations Ms. Sanders had with other employees after an August 6, 2020, meeting regarding an appreciation luncheon for the Mack Refill team.

21. Per COVID-19 protocols, Ms. Sanders was aware luncheons were prohibited (i.e. bringing in outside food for many employees to congregate around without proper authorization).

4

22. Ms. Sanders informed Ms. Nevel that her Team Leader, Keith Carmichael, African American male, held an appreciation pizza luncheon without her knowledge, and that upon learning of the luncheon, only 30 minutes before the pizza was delivered, Ms. Sanders asked Mr. Carmichael which management employee had authorized the event.

23. Mr. Carmichael informed Ms. Sanders that he had not gotten authorization to hold the event and did not realize it was an issue.

24. Ms. Sanders told Mr. Carmichael that these types of events required prior authorization due to COVID-19 protocols, but rather than canceling the luncheon at the last minute, Ms. Sanders instead directed Mr. Carmichael to enforce CDC mask and social distancing guidelines.

25. Ms. Sanders had the authority to direct Mr. Carmichael to follow the CDC guidelines and to counsel him about requiring prior authorization for any future events.

26. During the same meeting, Mr. Nelson asked Ms. Sanders about allegations that Ms. Sanders questioned Mr. Nelson's leadership ability in front of other employees.

27. Ms. Sanders denied this accusation, stating specifically that she did not work closely enough with Mr. Nelson to have knowledge of his leadership ability.

28. Ms. Nevel then mentioned that there were questions as to another event wherein Ms. Sanders had informed them that other employees had brought in food that was not within the guidelines as well (McDonald's breakfast food items).

29. More generally, Ms. Nevel questioned Ms. Sanders's work ethic and leadership ability—including discussing complaints allegedly raised by other employees, about which Ms. Sanders had never previously been made aware or counseled.

30. Ms. Nevel questioning Ms. Sanders' performance and leadership came as a surprise to Ms. Sanders, as her performance metrics (KPI's) had been on target or above throughout her employment, even given the difficulties presented by COVID-19 restrictions.

31. Any alleged issues about allowing fast food to be consumed on premises is trivial and/or pre-textual.

32. During this conversation, Ms. Sanders was becoming increasingly concerned about her job security, given these unfounded allegations.

33. The meeting followed closely in time to the conversation with Brad Bossence, white male, taking issue with Ms. Sanders, a black female, standing up to him during a meeting.

34. Ms. Sanders was especially concerned that she was being targeted following her meeting with Mr. Bossence because, as stated above, up until this point, Ms. Sanders had received no disciplinary actions or performance improvements and her April 2020 performance appraisal showed no weak areas or areas needing improvement.

35. Therefore, Ms. Sanders was aware her performance was not actually at issue.

36. Ms. Nevel proceeded to inform Ms. Sanders that she was being sent home and the HR Manager, Sue Kinsey, would follow up with her.

37. Ms. Sanders was understandably shocked and upset, especially given the triviality, retaliatory and discriminatory context of these allegations.

38. As of this date, Ms. Sanders has still not personally heard from Ms. Kinsey or Volvo since her departure and has not received anything in writing as to the formal reason for her termination or factual data on which it was based.

39. Ms. Sanders believes that she has been discriminated against due to her race and sex.

40. Based upon her experience in her job and working for the company, Plaintiff was terminated because she was an African American female and the predominately white male management did not want an African American female speaking up and standing up for herself.

41. Two prior managers left due to their racially negative treatment by Defendant.

42. Rodney Brooks (African American, male) (Plaintiff's manager) left in March/April 2020, was mistreated by Brad Bossence due to his race.

43. Ricky Hopson (African American male) Ops Manager for Second Shift, left within approximately two weeks after Plaintiff's wrongful termination.

44. Plaintiff observed Mr. Hopson being mistreated and being treated as an outcast due to his race.

45. In addition to her abrupt termination, Ms. Sanders was denied a promotional opportunity, and had to forgo the raise she was expecting to receive in December 2020.

46. In 2019 when Ms. Sanders stared as lead, her group was at 40% of their performance matrix. By the time of her wrongful termination, the group had improved to 97%.

47. Despite her work, Ms. Sanders was not given the normal raises that other similarly situated employees received in March/April of 2020.

48. In 2018 Ms. Sanders was paid overtime based upon her hourly rate which was approximately $27 per hours.

49. As of on or about September of 2019 the Defendant wrongfully stopped paying Ms. Sanders overtime.

50. Between September 2019 through December 31, 2019 Plaintiff worked overtime of approximately 32 hours per week.

51. Plaintiff was paid monthly.

52. Prior to stopping the overtime for First Line Managers (FLM's) in on or about September 2019 the HR Director out of Greensboro, NC, Tess, told Brad Bossence and Bob Holcomb that they would not be in compliance with the FLSA if they stopped overtime for four (4) employees, Plaintiff, Jennifer Carter (African American, female), Anibo (African American, male), Michael (African American, male).

53. The other Volvo plants paid the First Line Managers overtime.

54. Tess informed Plaintiff of this conversation with Tess and Bossence and Holcomb regarding the FLSA and overtime in 2019.

55. Bossence and his boss Holcomb knew that failure to pay overtime to the FML's would be a violation and they stated to Tess that they would worry about it when it came up.

56. Ms. Sanders met with Bossence individually and was told in August of 2019 that she would not be receiving her overtime. She was given a paper saying that she was not going to receive her overtime pay, signed by Bossence.

57. Ms. Sanders did not sign the paper.

58. During the August 2019 meeting with Bossence, Plaintiff was informed that she would be receiving a $5000 increase in her annual pay (from $70,000 to $75,000) due to the overtime non-payment.

59. This $5000 did not cover her overtime.

60. Plaintiff was receiving approximately $3900 monthly in overtime starting in January 2019 until her overtime was stopped in September 2019.

61. The company reinstated overtime in on or about January 2022, and only for weekend pay.

62. Defendant did not pay Plaintiff her overtime from September 2019 when it was stopped until her wrongful termination on or about September 15, 2020.

63. The management team was all Caucasian Males, except Rebecca Nevel, (Hispanic/Latina, female). Rebecca was the communications manager.

64. In on or about September Defendant promoted Edward "Eddie" Nelson, African American male, to Operations Manager and he joined the management team.

65. Plaintiff applied for the position of Operations Manager and was far better qualified for the position.

66. Prior to working for Defendant, Plaintiff was the Operations Manager at two different companies for approximately 20 years.

67. After being wrongfully terminated Plaintiff returned to a former company in February 2021. On or about June 16, 2021, Plaintiff returned to a management position at the former company.

68. As of approximately February 2021 Plaintiff was working part-time for the former company and became the manager in June 2021. Plaintiff was working part-time to start as she was also working for a temporary agency working full-time but making less money than she had been making when she worked for defendant.

69. Plaintiff took the part-time job to try to increase her overall salary.

70. By June 2021, Plaintiff in taking the position with the former company was making less than the base salary as she did when working for Defendant, by approximately $13K.

71. Once she was hired into a full-time management position with the former company, Plaintiff stopped her temporary job.

72. Plaintiff received a 3% increase in October of 2021.

9

73. Plaintiff received an additional income increase as of May 31, 2022 as her grade level was increased.

74. In her current position Plaintiff is not offered overtime as a manager.

75. Plaintiff does not make the same level of pay she would have been receiving if she was still working for Defendant, being properly paid her overtime.

## CAUSES OF ACTION

## COUNT I

## DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

76. Plaintiff incorporates all the foregoing paragraphs above as if fully set forth herein, and alleges that:

77. Plaintiff is female and is African American, members of protected classes covered by Title VII, 42 U.S.C. sec. 2000e, *et seq*.

78. The discriminatory actions, conduct and/or omissions were directed by Defendant through its employees because of Plaintiff's "sex" (female) in that the Defendant engaged in sex discrimination, by treating Plaintiff less favorably, including her termination; and/or in that Plaintiff was discriminated against due to her "sex."

79. The discriminatory actions, conduct and/or omissions were directed by Defendant through its employees because of Plaintiff's race (African American) in that the Defendant engaged in race discrimination, by treating Plaintiff less favorably, including her termination; and/or in that Plaintiff was discriminated against due to her race.

80. Defendant through its agents, representatives and employees, intentionally willfully and knowingly affected the terms and conditions of Plaintiff's employment and engaged in

unlawful sex and race discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et. seq.

81. As a direct and proximate result of Defendant's unlawful discriminatory conduct against Plaintiff, and as a direct and proximate result of the violations of Plaintiff's federally protected rights, Plaintiff has suffered harm, including but not limited to lost wages, benefits, and damage to her reputation, embarrassment, humiliation, pain and emotional distress and loss of enjoyment of life.

82. Pursuant to the US Supreme Court's Opinion in *Bostock v. Clayton County, Georgia*, 590 U.S. ___ (2020), while a case about discrimination based on sex/sexual orientation, the Court, in evaluating Title VII discrimination claims based on sex, "the plaintiff's sex need not be the sole or primary cause of the employer's adverse action." *Bostock* at 15.

83. Plaintiff asserts that this analysis is also applicable in race claims.

84. Here, Defendants violated Title VII as outlined in *Bostock*, including that they discriminated and/or retaliated against Plaintiff because of her sex and/or because the Defendants in in their actions and/or omissions in part due to Plaintiff's sex. By relying at least in part on Plaintiff's sex in causing an adverse employment action(s), Defendants violated Title VII, according to *Bostock*.

85. Here, Defendants violated Title VII as outlined in *Bostock*, including that they discriminated and/or retaliated against Plaintiff because of her race and/or because the Defendants in in their actions and/or omissions in part due to Plaintiff's race. By relying at least in part on Plaintiff's race in causing an adverse employment action(s), Defendants violated Title VII, according to *Bostock*.

86. Additionally, Plaintiff asserts claims of race "plus" and/or sex "plus" and/or intersectional claims of race and sex discrimination in violation of Title VII.

## COUNT II

### FLSA (29 U.S.C. § 201, et seq.)

87. Defendant through their acts and/or omissions failed to properly pay Plaintiff her overtime under the FLSA from September 2019 to September 2020. This failure was knowing and willful. Plaintiff worked approximately __ hours of overtime bi-weekly and was not properly compensated as required by law. Plaintiff is seeking overtime, other compensation, interest, liquidated damages, cost of suit and reasonable attorney's fees. Defendant implemented an illegal compensation computation method which resulted in underpayment. Plaintiff was an employee within the last three years at the time of the unpaid and/or underpaid overtime and thus entitled to the rights, protections and benefits under the FLSA. Plaintiff was non-exempt from overtime and Defendant through their then HR representative admitted same. Defendant's actions in failing to pay overtime were knowing, willful, in bad faith and reckless in violation of the FLSA. As a result overtime compensation has been wrongfully withheld. The employment and work records for Plaintiff are in the exclusive custody, control and possession of Defendant and Plaintiff is unable to state the exact amount owing. Plaintiff seeks a declaratory judgment, an order for an accurate accounting of compensation for Plaintiff, judgment against Defendant awarding Plaintiff monetary damages, liquidated damages, prejudgment and post judgment interest, attorneys fees as referred above and other relief as the court deems proper. Plaintiff also seeks a jury trial on this claim.

## COUNT III

### RACE 42 U.S.C. § 1981

88. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through

74 above as if fully incorporated herein.

89. Defendant's actions constitute intentional discrimination on the basis of race (black) in violation of 42 U.S.C. § 1981 and for retaliation for being targeted as a black female targeted by her white male supervisor and in that the Defendant engaged in race discrimination, by treating Plaintiff less favorably, including her termination; and/or in that Plaintiff was discriminated against due to her race.

90. The unlawful actions of the Defendant complained above were intentional, malicious, and taken in reckless disregard of the statutory rights of the Plaintiff.

91. As a consequence of the foregoing misconduct by the Defendant, Ms. Sanders has suffered lost wages, benefits, and damage to her reputation, embarrassment, humiliation, pain and emotional distress and loss of enjoyment of life.

92. Defendant's violation of Plaintiff's federally protected rights was done with malice or reckless indifference to Plaintiff's federally protected rights so that Defendant is liable for punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that the Court enter a judgment in her favor against the Defendants following a jury verdict in her favor and that the following relief be granted:

1. A permanent injunction against the Defendant prohibiting any future discriminatory practices as there is no adequate or complete remedy at law to redress the discrimination, retaliation, and harassment;

2. An Order to Defendant to conduct training concerning the prevention of discriminatory practices based upon race and sex; and other equitable relief as may

be appropriate;

3. Back-pay, lost benefits and other pecuniary and economic losses caused by the Defendant's unlawful conduct;

4. Compensatory damages and losses in an amount to be determined at trial but not less than $300,000.00;

5. All reasonable attorneys' fees, costs, pre-judgment and post-judgment interest; and

6. Such further relief as is deemed appropriate.

A JURY TRIAL IS DEMANDED.

Respectfully submitted,

VERONICA SANDERS

**/s/ Kristy L. Bennett**
KRISTY BENNETT BPR# 99525
TRESSA V. JOHNSON BPR# 104892
Johnson & Bennett, PLLC
1407 Union Ave., Ste. 807
Memphis, TN 38104
(901) 402-6601
(901) 462.8629 fax
kristy@myjbfirm.com
tressa@myjbfirm.com

**/s/ Maureen T. Holland**
Maureen T. Holland, Esq. (TN#15202) (pro hac vice, if allowed)
Yvette H. Kirk, Esq. (TN#32174) (pro hac vice, if allowed)
HOLLAND & ASSOCIATES, PC
1429 Madison Avenue
Memphis, TN 38104
Telephone: (901) 278-8120
Fax: (901) 278-8125
maureen@hollandattorney.com
*Attorneys for Plaintiff*

## Oath

I, Veronica Sanders, declare under penalty of perjury under the laws of the United States of America that the foregoing facts set out in my Complaint for Damages are true and correct to the best of my knowledge and belief.

Executed on June 23, 2022.

*[signature]*
Veronica Sanders